John T. WHITSON, Jr., Plaintiff,

v.

Thomas J. GILBERG, Jr., individually and as a member of the Suffolk County Police Department, Greg Mineo, individually and as an Assistant District Attorney with the Suffolk County District Attorney's Office and The County of Suffolk, Defendants.

No. CV 09–4748.

United States District Court, E.D. New York.

June 13, 2011.

Kujawski & Dillicarpini, Esqs., by Bryan Q. Kujawski Esq., Deer Park, NY, Attorneys for Plaintiff.

Christine Malafi, Esq., Suffolk County Attorney, by Brian C. Mitchell, Esq., Deputy County Attorney, Hauppauge, NY, Attorney for Suffolk County Defendants.

McCabe Collins McGeough & Fowler, by David T. Fowler, Esq., Teresa Campano, Esq., Carle Place, NY, Attorneys for Defendant Gilberg.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is a civil rights lawsuit commenced by Plaintiff John Whitson ("Plaintiff" or "Whitson"), arising out of his May 2007 arrest on charges that he was involved in sale of drugs to undercover police officers. After the Prosecutor declined to pursue charges, Plaintiff commenced this federal action, alleging a claim pursuant to 42 U.S.C. § 1983 ("Section 1983"), and a related state claim. While Whitson originally named the County of Suffolk and Assistant District Attorney Greg Mineo as Defendants, Plaintiff has agreed to dismissal of the claims against these Defendants. Remaining for adjudication is the claim against Police Officer Thomas J. Gilberg ("Gilberg"). Presently before the court is Gilberg's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, the motion is granted.

## BACKGROUND

### I. Factual Background

#### A. The Undercover Buy and the Identification of Plaintiff

On May 29, 2007, Gilberg and a partner were engaged in an undercover operation to attempt to purchase drugs. At approximately 10:50 P.M., the officers purchased a small quantity of crack cocaine from an individual with whom they negotiated from their unmarked vehicle. Attached to that vehicle was a video camera that recorded the events of the night of the sale. The videotape of that sale is before the court and, in addition to deposition transcripts and documents properly before the court, has been reviewed.

The videotape reveals that Gilberg and his partner negotiated the sale while remaining in their vehicle. Gilberg was seated in the front passenger seat, and negotiated with the seller through an open window. The seller of the drugs was a light skinned Black or Hispanic male, with

bushy black hair who was wearing a green and yellow warm-up suit. The negotiation lasted several minutes, during which time the seller was clearly visible and engaged in conversation with Gilberg.

To avoid compromise of their undercover operation, no arrest was made at the time of the sale, or that night. Instead, after the sale, Gilberg and his partner returned to their precinct. The videotape of the evening's events was turned in to the police electronics team, and a still photograph of the suspect was created. That photograph depicted the suspect's face and a portion of his upper torso—it was not a full body photograph. Neither Gilbert nor his partner were familiar with the individual from whom they purchased the drugs, and therefore could make no identification. Gilberg asked a fellow police officer, Randy Edwards ("Edwards"), to review the photograph generated from the videotape. Gilberg thought to consult Edwards because of Edwards' familiarity with the area where the arrest was made, and with individuals who lived there. Edwards unequivocally identified the individual in the photograph as Plaintiff John Whitson. Thereafter, Gilberg located a mug shot of Whitson to determine whether Whitson was indeed the individual from whom he had purchased drugs. He concluded that it was. Gilberg later returned to the area where the drugs were purchased. It was his intention on those trips to purchase drugs in general, and to make a second buy from Whitson, who, as noted, he had identified as the seller on the videotape. Although attempts were made, Gilberg did not again encounter the same seller. Nevertheless, based upon his comparison of Whitson's mug shot to his memory of the event, Gilberg believed that Whitson was the seller.

When Whitson was arrested in January 2008, it was not by Gilberg, but by other officers acting on Gilberg's information. The reason that Gilberg did not make the arrest was to avoid compromise of his position as an undercover police officer. Upon his arrest, Whitson was bought to the local precinct. After viewing Whitson at the precinct, Gilberg again identified him as the seller. Whitson was thereafter brought before a grand jury where he was identified by Gilberg. After Whitson was charged, Gilberg was once again asked whether he was certain that the person from whom he purchased drugs was Whitson. Gilberg was shown a recent photograph of Whitson which depicted scarring on his right arm. Gilberg was also asked to review the videotape made on the night of the buy. Gilberg continued to maintain that the suspect from whom he had purchased rugs was, indeed, Whitson.

The District Attorney's office contacted Edwards and asked that he view the videotape of the drug buy. After viewing the videotape, Edwards expressed doubt as to whether Whitson was, indeed, the person who sold drugs to Gilberg. Edwards was asked whether he would have identified Whitson to Gilberg had he been shown the videotape, instead of the still photograph. He responded that he still would have identified Whitson as the perpetrator, although with a lesser level of confidence. Approximately one year after the grand jury proceeding, the District Attorney's office made the decision not to pursue the prosecution against Whitson.

II. *Plaintiffs' Complaint and the Motion for Summary Judgment*

As noted, Plaintiff's complaint sets forth a claim pursuant to Section 1983. That claim alleges, essentially that there was not probable cause to arrest Plaintiff, and therefore, he was falsely arrested in violation of Section 1983. In support of his argument, Plaintiff points to the fact that

he has severe scarring on his arms, which scarring was clearly not present on the person who sold drugs to Gilberg. Additionally, Plaintiff argues that the speech used by the suspect was more likely to be used by a person of Hispanic origin, and not by a person of Whitson's racial/ethnic background. Defendant contends that based upon Gilberg's recollection, and the clear identification by Edwards there was probable cause to arrest or, in any event, arguable probable cause sufficient to entitle Defendant to qualified immunity and summary judgment. After outlining relevant legal principles, the court will turn to the merits of the motions.

## DISCUSSION

### I. General Legal Principles

#### A. Standards on Motion for Summary Judgment

The standards for summary judgment are well settled. Rule 56(c) of the Federal Rules of Civil Procedure 56(c), states that summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir.2010). The moving party bears the burden of showing entitlement to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir.2005). In the context of a Rule 56 motion, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir.2004): *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.' " *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir.2002), quoting, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis in original). As the Supreme Court stated in Anderson, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). "[T]he mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247–48, 106 S.Ct. 2505 (emphasis in original). The nonmoving party may not rest upon mere conclusory allegations or denials but must set forth " 'concrete particulars' " showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984), quoting, *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir.1996), quoting, *Research Automation Corp.*, 585 F.2d at 33.

### II. False Arrest and False Imprisonment

#### A. Stating a Claim

█ The elements of a Section 1983 claim for false arrest are the same as the

elements of such a claim under New York state law, and are well established. *See Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir.2007); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996). Specifically, a Plaintiff seeking to establish such claims must show that: (1) defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement and (4) the confinement was not "otherwise privileged." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.1995); *see Southerland v. Garcia*, 2010 WL 5173711*9 (E.D.N.Y.2010); *Danielak v. City of New York*, 2005 WL 2347095 *6 (E.D.N.Y.2005), *aff'd. mem.* 209 Fed. Appx. 55 (2d Cir.2006). The final element of the cause of action is negated, and no civil rights claim is stated, if there was probable cause for the arrest. *Jenkins*, 478 F.3d at 84; (probable cause is "complete defense" to claim of false arrest) *Caldarola v. Calabrese*, 298 F.3d 156, 161 (2d Cir.2002) (probable cause is "absolute defense" to claim of false arrest); *Elufe v. Aylward*, 2011 WL 477685 *4 (E.D.N.Y. 2011) (same).

■ Probable cause to arrest exists where an officer "has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Caldarola*, 298 F.3d at 162; *Elufe*, 2011 WL 477685 *4; *see, e.g., Singer*, 63 F.3d at 119; *Danielak*, 2005 WL 2347095 at *6. The probable cause determination requires a court to consider the facts available to the officer at the time of, and immediately prior to, the arrest. *Caldarola*, 298 F.3d 156; *Elufe*, 2011 WL 477685 *4. Under both New York and Federal law, probable cause may be determined as a question of law to be decided by the court "when there are no genuine disputes about the facts and proper inferences to be drawn therefrom." *Armatas v. Maroulleti*, 2010 WL 4340437 *6 (E.D.N.Y.2010).

## III. *Disposition of the Motion*

### A. *Probable Cause Bars The Section 1983 Claim of False Arrest*

■ In this case it is clear that probable cause existed to arrest Whitson. As noted above, Whitson was clearly and positively identified by Edwards to Gilberg. After Edwards' identification, Gilberg viewed Whitson's mug shot and, based upon his memory of the incident, concluded that Whitson was indeed the person from whom he had purchased drugs on the night in question.

Whitson makes much of the fact that the seller of drugs did not have scarring on his arms. Such scarring was not visible on the photograph shown to Edwards, and was reasonably not the focus of his identification. Instead, Edwards identified the seller based upon his recognition of his face. It was reasonable for Gilberg to compare the photograph with Whitson's mug shot and conclude, based upon his confidence in Edwards' knowledge of the area where the drugs were bought, that Whitson was the seller. As to the allegation that the seller used language that would not have been used by a person of Whitson's background, the court finds no facts to support such a claim. The seller of drugs spoke in the vernacular that would likely be used in during a drug street buy situation. He spoke in English, and there is no indication that any language used was particular to one particular ethnic background.

As noted above, the probable cause determination focuses on what was known to the officers at the time of the arrest, and not the outcome of the criminal proceedings. Thus, the fact that the District At-

torney chose not to prosecute Whitson does not negate the presence of probable cause, and cannot, standing alone, form the basis for a civil rights claim. *E.g., Spinks v. Reinstein,* 2007 WL 189472 *4 (W.D.N.Y.2007); *see Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (police officer not liable for false arrest "simply because the innocence of the suspect is later proved").

In light of the foregoing, the court holds that there exists no genuine disputes as to the issue of probable cause. Probable cause existed to arrest Plaintiff. Accordingly, the court dismisses Plaintiff's Section 1983 claim for false arrest.

## B. *Qualified Immunity*

■ In addition to arguing that probable cause bars Plaintiff's claim, Defendant argues that the claim is barred by qualified immunity. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), quoting, *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Qualified immunity bars an action against a government official where the conduct alleged "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Zellner v. Summerlin,* 494 F.3d 344, 367 (2d Cir. 2007), quoting, *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

■ In a case alleging false arrest, qualified immunity exists where the defendant police officer had "arguable" probable cause to arrest. *Caldarola,* 298 F.3d at 162. Arguable probable cause exists where it was either objectively reasonable to believe that probable cause existed, or officers of reasonable competence could disagree as to the existence of probable cause. *Escalera v. Lunn,* 361 F.3d 737, 743 (2d Cir.2004); *Armatas,* 2010 WL 4340437 *8; *see also Caldarola,* 298 F.3d at 162 (arguable probable cause exists where officer holds reasonable, albeit mistaken, belief as to probable cause).

■ In addition to holding that probable cause bars the claim of false arrest, the court holds further that even if probable cause did not exist, there can be no question but that arguable probable cause sufficient to support qualified immunity, exists. Specifically, even if Gilberg was mistaken as to his belief regarding probable cause, it was certainly reasonable for him to believe that probable cause existed at the time of the arrest. Such reasonable belief clearly exists based upon Edwards' identification of Whitson, and the officer's knowledge of the area. In light of the foregoing, Gilberg is entitled to dismissal of the Section 1983 claims for false arrest.

## C. *Pendent State Claim*

In view of the fact that the federal and state claims require proof of the same elements, dismissal of Plaintiff's Section 1983 claim mandates dismissal of Plaintiff's pendent state claim.

## *CONCLUSION*

For the reasons set forth above, the court grants the motion for summary judgment. Accordingly, the complaint is dismissed in its entirety. The Clerk of the Court is directed to terminate the motion for summary judgment and to close the file in this matter.

SO ORDERED.